IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA PLAINTIFF

V. CRIMINAL NO. 3:25-CR-00078-DCB-ASH

TIMOTHY BROWN DEFENDANT
A/K/A KT

# MOTION TO DISMISS INDICTMENT

COMES NOW the Defendant Timothy Brown, by and through counsel, and files this his Motion to Dismiss Indictment and would state unto the Honorable Court the following, to wit:

1. Defendant Timothy Brown was arrested on October 3, 2024 and charged with multiple controlled substance offenses.

2. On May 6, 2025, Brown was indicted in this district for possession with the intent to distribute N-Phenyl-N-[1-(2-phenylethyl)-4 piperidinyl] propenamide, a Schedule II controlled substance (x3), possession with the intent to distribute methamphetamine, a Schedule II controlled substance (x5), and possession with intent to distribute cocaine base, a Schedule II controlled substance. A superseding indictment was returned on June 10, 2025 in which the charge of possession of ammunition by a convicted felon was added. *See* original indictment as Exhibit A.

3. 18 U.S.C. § 3161(b) provides that an indictment must occur within thirty

(30) days after the arrest.[1] The penalty for failure to do so is dismissal of the indictment as per 18 U.S.C. § 3161(a)(1).

4. Defendant acknowledges that while he was arrested pursuant to State-issued warrants obtained by the Hinds County Sheriff's Office, it was the FBI that, in fact, made the arrest which triggered a limitations period as found in § 3161(b). The proof would show that the investigation as to Brown began with and was conducted by the FBI. The FBI obtained a search warrant, seized the controlled substances pursuant to such search warrant, and placed those substances in the custody of the Drug Enforcement Agency (D.E.A.). Then, the FBI indirectly obtained a subsequent bench warrant and search warrant for Defendant through its FBI Task Force Officer employed at the Hinds County Sheriff's Department, which directly led to Defendant's arrest by the FBI. *See* federal search warrant as Exhibit B. *See* State Bench Warrant for Defendant as Exhibit C. *See* State Search Warrant as Exhibit D. *See* Affidavit for State Search Warrant as Exhibit E. *See* Transcript of Preliminary Hearing attached as Exhibit F.

5. When the primary or exclusive purpose of the detention by the State is to hold Defendant for the federal criminal proceedings, the "ruse exception" applies, and the Speedy Trial Act is triggered. *See* U.S. v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000).

---

[1] Excluded from the thirty (30) day time limit are other proceedings of Defendant under 18 U.S.C. §316 (b) (e.g., delay due to mental evaluation, trial of the charges, etc.).

6. Defendant would show that his arrest by the FBI triggered the speedy trial clock. Because more than thirty (30) days had elapsed since Brown's arrest, the indictment must be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Court will grant a hearing on his motion and thereafter dismiss the indictment.

RESPECTFULLY SUBMITTED, this the 16th day of January, 2026.

TIMOTHY BROWN,
DEFENDANT

BY: **/s/ Sanford E. Knott**
SANFORD E. KNOTT, MSB# 8477

OF COUNSEL:

SANFORD KNOTT & ASSOCIATES, P.A.
Post Office Box 1208
Jackson, Mississippi 39215-1208
Telephone Number: (601) 355-2000
Facsimile Number: (601) 355-2600

# CERTIFICATE OF SERVICE

I, Sanford E. Knott, attorney for Defendant, do hereby certify that I have on this date electronically filed via, the Electronic Case Filing system, with the Clerk of the Court a true and correct copy of the foregoing document and an e-mailed copy sent to the following:

brett.grantham@usdoj.gov
C. Brett Grantham, Esquire
Office of the United States Attorney
188 East Capitol Street, Suite 500
Jackson, Mississippi 39201

This the 16th day of January, 2026.

**/s/ Sanford E. Knott**
SANFORD E. KNOTT, MSB# 8477

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
MAY - 6 2025
ARTHUR JOHNSTON
BY DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v. CRIMINAL NO. 3:25-cr-78-DCB-ASH

TIMOTHY BROWN
a/k/a KT

21 U.S.C. § 841(a)(1)

**The Grand Jury charges:**

COUNT 1

On or about, August 11, 2022, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl) -4 piperidinyl] propenamide, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

COUNT 2

On or about, February 28, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code, Section 2.

COUNT 3

On or about, April 4, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by

others known and unknown to the Grand Jury, did knowingly possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code, Section 2.

COUNT 4

On or about, April 4, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl) -4 piperidinyl] propenamide, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

COUNT 5

On or about, September 13, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) and Title 18, United States Code, Section 2.

COUNT 6

On or about, October 3, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in

violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), and Title 18, United States Code, Section 2.

COUNT 7

On or about, October 3, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

COUNT 8

On or about, October 3, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute 27 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), and Title 18, United States Code, Section 2.

COUNT 9

On or about, October 3, 2024, in Hinds County, in the Northern Division of the Southern District of Mississippi, the defendant, **TIMOTHY BROWN a/k/a KT**, aided and abetted by others known and unknown to the Grand Jury, did knowingly and intentionally possess with the intent to distribute a mixture or substance containing a detectable amount of N-Phenyl-N-[1-(2-phenylethyl) -4 piperidinyl] propenamide, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

AO 93 (Rev. 11/13) Search and Seizure Warrant

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
SEP 24 2024
ARTHUR JOHNSTON
BY ______ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of Mississippi

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
3654 LEE DRIVE, JACKSON, MISSISSIPPI 39212

Case No. 3:24-mj-697-ASH

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Southern District of Mississippi
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:
See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before October 8, 2024 *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ______________________.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ______________.

Date and time issued: 9/24/2024 at 2:36pm [signature]
*Judge's signature*

City and state: Jackson, Mississippi Andrew S. Harris, Magistrate Judge
*Printed name and title*

A TRUE COPY, I HEREBY CERTIFY
ARTHUR JOHNSTON, CLERK
BY [signature]
DEPUTY CLERK

GOVT-000139-BROWN

EXHIBIT "B"

24-2082

# BENCH WARRANT

## POSSESSION OF CONTROL SUBSTANCE [41-29-139(c)]

**THE STATE OF MISSISSIPPI**

**TO THE SHERIFF OF HINDS COUNTY, MISSISSIPPI GREETINGS:**

**We command you to take the body of Timothy Tyrone Brown Black/Male DOB: 07/05/1980 SSN#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 if to be found in your county, and him safely keep, so that you have His body before the County Court of Hinds County, in said State, to be held at the Courthouse thereof, in the City of Jackson, then and there to answer unto the State of Mississippi on a charge of**

**Possession of Controlled Substance, 41-29-139(C),**

**by Affidavit.**

**HEREIN FAIL NOT, and have then and there this writ, with the manner you have executed the same.**

**Given under my hand and seal, issued this the 3 day of October 2024.**

[signature]
**Circuit Court Judge**
**Hinds County, MS**



EXHIBIT "C"

# SEARCH WARRANT

**STATE OF MISSISSIPPI**
**COUNTY OF HINDS**

TO ANY LAWFUL OFFICER OF HINDS COUNTY

WHEREAS, Hinds County Sheriff's Office Investigator Jaye Coleman, known to me as a credible person, have this day made complaint on oath before me as follows:

1. That affiant has good reason to believe and do believe that certain things hereafter described below are now being concealed in or about the following place in Hinds County:
**3655 Lee Drive, Ms., in the 1st Judicial District of Hinds County**

2. That the place described above is occupied and/or controlled by:

**Jerrica D. Jenkins SS# 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, Dob: 1/16/2000**

4. That said things are particularly described as follows:
**Narcotics describes as Methamphetamine**

4. That possession of the above-described things is in itself unlawful (or the public has a primary interest in, or primary right to possession of, the above-described things), in that said things are:

**Evidence related to 3654 Lee Drive in Jackson, Ms., in which Narcotics was obtained from this location inside an oven at this residence. Subject was advised by occupants of this address that suspect, Timothy Brown also frequents the residence of 3655 Lee Drive., Jackson, Ms.**

5. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are shown on a sheet headed "Underlying Facts and Circumstances" which is attached hereto, made a part hereof and adopted herein by reference.

6. This Court, having examined and considered said affidavit, and also having heard and considered evidence in support thereof from the affiant named therein does find that probable cause for the issuance of a search warrant does exist. THEREFORE, you are hereby commanded to proceed at any time in the day or night to the place described above and to search forthwith said place for the things specified above, making known to the person or persons occupying or controlling said place, if any, your purpose and authority for so doing, and if the things specified above be found there to seized them, leaving a copy of this warrant and a receipt for the things taken; and bring the things seized before this Court instanter; and prepare a written inventory of the items seized, and have then and there this writ, with your proceedings noted thereon.

Sworn to and subscribed before me, the 3rd day of October, 2024.

Circuit Court Judge, Hinds County, Mississippi

GOVT-000209-BROWN

# AFFIDAVIT FOR SEARCH WARRANT

**STATE OF MISSISSIPPI**
**COUNTY OF HINDS**

This day personally appeared before me, the undersigned judicial officer of said county, Hinds County Sheriff's Office Investigator Jaye Coleman, known to me to be (a) credible person (s), and who being duly sworn, on oath says that the property described hereinafter falls within those grounds indicated below by "X" (s) in that it:

_X_ as fruit of the crime of: **Narcotics, describes as Methamphetamine**

_X_ was used as the means of committing a felony

_X_ is evidence which tends to show that a felony has been committed or a particular person has committed a felony

x_ Possession of the said property is unlawful in that it is stolen and/or violates the Uniform Controlled Substances Law

And requests the issuance of a warrant to SEARCH the following: 3655 Lee Drive, Jackson, MS. 39212 to include the residence, out buildings, vehicles for the purpose of locating Narcotics and suspect Timothy Brown who frequents this residence

The facts supporting this application for the issuance of a search warrant are set forth in the attached sheet designated "Underlying Facts and Circumstances" which is incorporated herein by this reference thereto.

WHEREFORE, it is prayed that a Search Warrant issue for the above premises for the seizure of the aforesaid items.

____________________
Affiant

Sworn to and subscribed before me this 3rd day of October, 2024.

[signature]

Circuit Court Judge, Hinds County, Mississippi

# Underlying Facts & Circumstance

**Case# 2024-2082(Possession of Controlled Substance [41-29-139(c)])**

On Thursday October 3,2024 FBI Agents along with TFO Investigator Coleman(I-3), approached the address of 3654 Lee Drive in Jackson, MS, in attempt to apprehend suspect Timothy Brown (DOB 07/05/1980). During the search of the address agents found more than 2g of methamphetamines inside of the oven, located in the kitchen.

Based on this information, the Court is asked to issue warrants for **Timothy Tyrone Brown (DOB 07/05/1980 SSN 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)** for the charges of **Possession of Controlled Substance [41-29-139(c)].**

Investigator J. Coleman

# Underlying Facts & Circumstance

**Case# 2024-2082(Possession of Controlled Substance [41-29-139(c)])**

On Thursday October 3,2024 FBI Agents along with TFO Investigator Coleman(I-3), approached the address of 3654 Lee Drive in Jackson, MS, in attempt to apprehend suspect Timothy Brown (DOB 07/05/1980). During the search of the address agents found more than 2g of methamphetamines inside of the oven, located in the kitchen.

Based on this information, the Court is asked to issue warrants for **Timothy Tyrone Brown (DOB 07/05/1980 SSN 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**) for the charges of **Possession of Controlled Substance [41-29-139(c)].**

**Investigator J. Coleman**

IN THE COUNTY COURT OF THE FIRST JUDICIAL
DISTRICT OF HINDS COUNTY, MISSISSIPPI

STATE OF MISSISSIPPI

VERSUS CAUSE NO.: 24-1614

TIMOTHY BROWN DEFENDANT

* * * * * * * * * * * * * * * *

TRANSCRIPT OF THE PROCEEDINGS HAD AND DONE IN THE PRELIMINARY HEARING OF THE ABOVE-STYLED AND NUMBERED CAUSE BEFORE THE HONORABLE JOHNNIE MCDANIELS, HINDS COUNTY COURT JUDGE, ON THE 19TH DAY OF DECEMBER, 2024.

* * * * * * * * * * * * * * * *

APPEARANCES:

Present and Representing the State:

HONORABLE LOUIS CLIFFORD
ASSISTANT COUNTY PROSECUTOR

Present and Representing the Defendant:

HONORABLE SANFORD E. KNOTT
ATTORNEY AT LAW

TABLE OF CONTENTS

PAGE
Style and Appearances -------------------- 1
Table of Contents ------------------------ 2
**Testimony of Investigator Jaye Coleman**
Direct Examination by Mr. Clifford ----- 3
Cross-Examination by Mr. Knott --------- 12
Redirect Examination by Mr. Clifford --- 21
Court's Inquiry -------------------------- 21
Further Cross by Mr. Knott ------------ 22
Witness Excused -------------------------- 23
Arguments (Probable Cause):
By Mr. Knott --------------------------- 23
By Mr. Clifford ------------------------ 26
Court's Ruling ---------------------------- 27
Arguments (Bond):
By Mr. Knott --------------------------- 28
By Mr. Clifford ------------------------ 32
Court's Ruling ---------------------------- 33
Preliminary Hearing Concluded ------------- 34
Court Reporter's Certificate -------------- 35

BY THE COURT: *State of Mississippi vs. Timothy Brown.*

**INVESTIGATOR JAYE COLEMAN,**

having first been duly sworn, was examined and testified as follows, to-wit:

BY THE COURT: You may proceed.

BY MR. CLIFFORD: Thank you, Your Honor.

**DIRECT EXAMINATION**

**BY MR. CLIFFORD:**

Q. Will you please state your name for the record?
A. Jaye Coleman.
Q. Would you spell your first name, please?
A. J-A-Y-E.
Q. All right. Where are you employed?
A. Hinds County Sheriff's Office and a task force officer with the FBI.
Q. Are you currently an investigator with the sheriff's department?
A. Yes, sir.
Q. How long have you worked in law enforcement?
A. Over 26 years.

Q. You are a certified law enforcement officer?
A. Yes, sir.
Q. I want to draw your attention to on or about October 3, 2024. Were you working for the sheriff's department at that time?
A. Yes, sir, I was.
Q. Are you familiar with the matter we're here on today involving Timothy Brown?
A. I am.
Q. What was your involvement in this matter, Investigator Coleman?
A. Okay. On that particular day a search warrant was being served at 3654 Lee Street for Timothy Brown.
Q. What precipitated the search warrant in this matter?
A. Basically, the FBI had made several control buys from this person.
Q. Okay.
A. Over the past year or so.
Q. And when you say person, you mean Timothy Brown?
A. Timothy Brown. Yes, sir.
Q. So there was an affidavit and a search

warrant?

A. Yes, sir.

Q. Who all was present when the search warrant was executed?

A. We had several special agents with the FBI and about five TFOs that's assigned to the FBI.

Q. And you were present?

A. Yes, sir.

Q. Tell us what occurred when you approached the 3654 Lee Drive.

A. Like I said, at that time a search warrant was served. FBI swat went to the house, threw flash-bang grenades at the house and made entry to the house.

During the search of the house a large amount of narcotics was found in the oven inside the house. No person was inside the house at the time. But while on scene, information was obtained that Mr. Brown was directly across the street at 3655 Lee Drive.

Agents actually went to that location, knocked on the door, spoke with the female that answered the door. They stated the reason for their visit and asked was Mr. Timothy Brown in

this residence; she said no. After that, she closed the door. She went back in.

Agents on scene, based on the information that they got, they maintained a visual search of the house at 3655. And I was tasked with coming back and getting a search warrant as well as an arrest warrant for that location at 3655.

Upon them getting the documents, FBI knocked on the door again, Mr. Timothy Brown answered the door and they placed him under arrest.

Q. Did Mr. Brown make any statement?

A. No, sir. He wanted to wait to have a lawyer present with him.

Q. What about the female? Was she questioned?

A. No. Other than on the porch and everything... that no one was there. I think she said she had just moved into the neighborhood, her husband was incarcerated. But shortly after we had that interview with her on the porch, she left the scene walking from the house and just... it's in an unknown location.

Q. Was there anyone else at this house, 3655?
A. No.
Q. Now, as far as 3654, who owns that house?
A. Timothy Brown. It's registered in the Hinds County Land Roll under Timothy Brown.
Q. You did the search. Now, what exactly did you find?
A. We found a large amount of methamphetamines inside the oven of the house, and a vehicle that was parked on the scene with a large amount of narcotics in the trunk of the vehicle, an abandoned vehicle-- of a disabled vehicle.
Q. Did you run the VIN on that vehicle?
A. I think the agents did. I didn't in particular.
Q. Do you know who the vehicle belong to, then?
A. It was said that it belonged to Mr. Timothy Brown.
Q. As far as when you say a large amount, do you recall how much it was?
A. Over 342 grams of--

BY MR. KNOTT: Your Honor, we would object at this point in time. The reason for our objection, Your Honor, is the affidavit that we have that we are here before the Court on charges Mr. Brown with--

BY THE COURT: Objection overruled.

BY MR. CLIFFORD: Your Honor, at this time we would move to amend the affidavit.

BY MR. KNOTT: Your Honor, we object to that.

BY MR. CLIFFORD: Your Honor, that's allowed under the criminal rules.

BY MR. KNOTT: Your Honor, we're here prepared for the prelim on the affidavit that's written. If the State wanted--

BY THE COURT: Again Counsel, this Court does not need talking objections. I'm going to grant the motion to allow the amendment, and the objection is overruled. You may

proceed, Counsel.

BY MR. CLIFFORD: Thank you, Your Honor.

**BY MR. CLIFFORD:** (Continuing)

Q. How was this amount determined? Was it weighed?

A. Yes. It was weighed at the conclusion of the first warrant. It went back to the Jackson office of the FBI where it was weighed. It was field-tested; came back positive for methamphetamines. It was sealed and sent to the DEA for further testing.

Q. Have you received those results back?

A. Not yet, sir.

Q. You said that he had been under FBI surveillance for a year or more?

A. Yes, sir.

Q. Do you know if anyone else other than Mr. Brown resided at the 3654 Lee Street?

A. I think it was a person that was in the shed. He has a shed at that house, and that's the person that was on the premises over there. That's about the only people we saw there.

Q. But as far as the house itself--

A. No. It was empty.

Q. --Mr. Brown was the only occupant?

A. He was not there. He was across the street.

Q. Right. But I'm saying during your surveillance?

A. Yes.

Q. Mr. Brown, was he known to law enforcement?

A. He has a lengthy criminal history.

Q. As far as your investigation into this matter, did you interview anyone else?

A. No. I didn't. Some of the agents on the scene spoke with him. Like I say, he refused. And Ms. Gibson-- I think her name was-- that was at 3655, just that knock and talk at the porch.

Q. Did they speak to any neighbors or people in the neighborhood? Do you know?

A. I can't recall. I know a lot of people came out because they heard the grenades and just observing, basically.

Q. Based upon that, Investigator Coleman, you filed the charge we are here on today, correct?

A. Yes, sir.

Q. You charged him with possession of a controlled substance, meth? Is that your charge?

A. Yes, sir, it is.

Q. And you said the search warrant was--was it 3654 Lee Drive, Jackson?

A. Yes, sir.

Q. That's Hinds County?

A. Yes, sir, it is.

Q. As far as your investigation, you're just awaiting the lab results from the DEA drug lab?

A. Yeah. We're waiting on the lab results. And the agent will submit the case to the assistant U.S. attorney at the DOJ?

Q. As well as the Hinds County district attorney?

A. Yes. The feds are going to adopt the case from the Hinds County District Attorney's Office.

BY MR. CLIFFORD: Thank you, Your Honor. We have no further questions at this time.

BY THE COURT: Cross.

## CROSS-EXAMINATION

**BY MR. KNOTT:**

Q. Coleman, Sanford Knott, once again. Good morning to you, sir.

A. Yes, sir. Good morning.

Q. This case began, actually, as a fed case because it was a fed search warrant, correct?

A. That's correct.

Q. Do you know if that search warrant was obtained on the day of the search, or was it done sometime before then?

A. I think the agent went before the judge and requested a search warrant, and you have a certain amount of time to serve that search warrant.

Q. I do understand. Do you know when that was?

A. It had to be prior to October 3rd, the day of. I don't know how many hours that you have to serve it, but it was prior to October 3rd.

Q. Absolutely. Did you participate in the obtaining of the search warrant, or was that simply the feds again?

A. No. That was the initial search warrant. That was federal.
Q. Okay. How many FBI agents came to the residence on October 3rd?
A. Approximately six special agents and five task force officers assigned to the FBI.
Q. Now, were you also present as well?
A. Yes, sir, I was on scene.
Q. As far as the drugs involved in this case, the affidavit says methamphetamine, correct?
A. That's correct.
Q. It also says that it was approximately two grams; is that right?
A. It was over two grams.
Q. Well, let me ask you this question. Was there a portable preliminary test given as to this methamphetamine? In fact, there was not, correct?
A. No. It was tested when it was brought back to the FBI building.
Q. I understand. Did you participate in that testing?
A. I did not.
Q. On the scene there was not a portable

test given, correct? To the best of your knowledge.

A. Right. It was field tested after it went to the FBI building.

Q. Okay. And that's what I'm trying to ask. About the field test. You didn't participate in the field test?

A. I did not.

Q. Would you agree with me that you don't know the results of that field test as of right now, do you?

A. Yes. When it got back to the FBI, it was confirmed to be methamphetamine. And that's when it was packaged and shipped to DEA for further testing.

Q. Well, let me ask you this question. If it were confirmed, then it does not need further testing, does it?

A. No. It still has to be shipped off.

Q. And the reason why is because any type of pre-test is not a confirmed test; is that correct? It's not a final test?

A. It's not a final test.

Q. Right.

A. It's tested and then sent to DEA for

further testing on the total amount of the weight.

Q. That's correct. And as of right now those test results have not come back?

A. No, sir.

Q. So we don't have a final test of what took place at that point in time, correct?

A. Not at this time.

Q. You mention about the residence. At the time that Mr. Brown was arrested, he was not at the residence where these drugs were, correct?

A. He was across the street. Yes.

Q. You mentioned also that there was at least one other person, that you know of, that has occupied the premises at some point in time, correct?

A. Well, it was an actual shed that was not connected to the house. And I think he was in a shed or around the shed. He wasn't in the the main part of the house.

Q. Now, this occurred October 3rd. Tell me, Agent Coleman, who was in and out of the house October 2nd?

A. I'm not sure if it was any on October

2nd.

Q. Who was in and out of the house on October 1st?

A. Sir, I can't answer that question. I didn't go to the place until October 3rd.

Q. Name all the people who were in and out of the house October 3rd, other than the agents. That is, all the individuals in and out of the house, other than agents and yourself, October 3rd.

A. You mean law enforcement agents who--

Q. Outside of law enforcement agency. Are you aware of others who had been in and out of the house?

A. No, no.

Q. You're not telling the Judge that no one actually visited that house while Mr. Brown lived there? You're not saying that, right?

A. I'm saying that we didn't go out there-- I didn't go out there before the 3rd.

Q. Did you notice the renovations that were taking place in the house?

A. No, sir. Swat went in the house. FBI swat. I didn't go inside. I was out on the outer perimeter securing the scene.

Q. So you didn't notice renovations in the house, correct?

A. No, sir.

Q. You didn't notice any other clothing in the house, correct?

A. I did not enter the house.

Q. Okay. So you cannot say that the premises with an address of 3654 Lee Drive exclusively belonged and occupied by Mr. Brown, correct?

A. According to the land roll, it's registered in his name as the owner.

Q. I understand, but that wasn't quite my question. Who occupied the house? Not who owned the house. Who occupied the house?

A. At the time that the search warrant was served no one was in the house.

Q. And do you know who actually lived at the house? That's my question.

A. No, sir, I do not.

Q. Do you know who actually frequented the house on that day?

A. No, I don't. Because, like I say, it was early. It was 6:00 in the morning when the warrant was served.

Q. So as of today, what we have is that there were, from your testimony, controlled substances found at 3654 Lee Drive, correct?
A. 3654, yes, sir.
Q. But they were not in the possession of Mr. Brown, correct?
A. He was not on scene for him to be in possession of them.
Q. And we don't know, based upon the record today, we don't know all others that may have frequented that residence-- or occupied the residence as of that day, correct?
A. I can't answer that.
Q. Because you didn't go into the residence, correct?
A. I did not enter the residence.
Q. And Mr. Brown never made a statement admitting responsibility that these items are his, correct?
A. He requested to be interviewed in the presence of his lawyer, so he did not make a statement.
Q. Did you ever take possession of the drugs in any way, shape or form?
A. No, sir. I was assigned to the outer

perimeter. I did not recover the drugs.

Q. Let me ask you this. If the feds are going to take this case, why did you file the affidavit?

A. Because I'm assigned to the feds, and information was gathered that Mr. Brown was at the location across the street.

Q. I do understand. And maybe I should have asked that question before. Tell me, for the record, what connection you have with the feds.

A. I'm a task force officer assigned to the them.

Q. How long have you been assigned to the feds?

A. Three years in March.

Q. And, so, there is no question in your mind, because you are a fed task force officer, that this case began and will end with the feds, correct?

A. Yes, that's the assumption. It's going to be adopted by the federal for prosecution.

Q. Well, it's already been taken. The feds have the drugs, right?

A. Yes.

Q. They took the drugs. You never had the drugs, right?

A. No. I never had possession of them.

BY MR. KNOTT: Court's indulgence.

(PAUSE IN PROCEEDINGS)

**BY MR. KNOTT:** (Continuing)

Q. Agent Coleman, just a few more questions and I'll be finished. Was there any additional evidence, other than the fact that the residence was registered, allegedly, to Mr. Brown, that these drugs belonged to Mr. Brown?

A. Repeat that question again, sir.

Q. Is there any additional evidence, beyond the fact that the address was registered to Mr. Brown, that these drugs actually were controlled and possessed by Mr. Brown?

A. No, sir. All I can say is that the drugs were recovered at a property that is owned by Mr. Brown.

Q. Okay. There's nothing else you have, correct?

A. No, sir.

BY MR. KNOTT: That's all I have. Thank you, Judge.

BY THE COURT: Any redirect?

BY MR. CLIFFORD: Briefly.

**REDIRECT EXAMINATION**

**BY MR. CLIFFORD:**

Q. Investigator Coleman, I believe it was your earlier testimony that this all started from a federal search warrant, correct?

A. Yes, sir.

Q. For Mr. Brown?

A. Yes, sir.

Q. In this residence at 3654 Lee?

A. That's correct.

Q. And that warrant was based upon what?

A. Prior controlled purchases from Mr. Brown.

Q. Thank you.

BY MR. CLIFFORD: No further questions, Your Honor.

BY MR. KNOTT: Your Honor, I do have brief argument for purposes of probable cause.

BY THE COURT: Officer, you said prior controlled purchases bought from Mr. Brown?

BY THE WITNESS: Yes, sir.

BY THE COURT: Were those at this property or near this property?

BY THE WITNESS: They were in the area, maybe a quarter of a mile away, during the surveillance. During that time it was tracked back to that location, and that's how we determined where he lived.

BY THE COURT: Any questions in response to the Court's question?

BY MR. KNOTT: Just one question.

**FURTHER CROSS-EXAMINATION**

**BY MR. KNOTT:**

Q. I want to clarify what the judge has asked you. The search warrant that was being served that dealt with other buys. But no other buys took place at that residence, correct? To the best of your knowledge.

A. You say there is no other buys?

Q. The other buys you've just testified to never took place at that residence, correct?

A. I'm not sure on that part. Because, like I say, it was several purchases, and I wasn't at every--

Q. So you're not saying it did; you're

saying you don't know?

A. The times that I was out the purchases were made in a quarter of a mile area. Like I said, surveillance was done and it was determined-- that's how we determined where he lived, by surveilling him.

Q. Okay. I understand. Thank you.

BY THE COURT: Thank you, Officer.

(Witness Excused)

BY THE COURT: The State may call your next witness, if any.

BY MR. CLIFFORD: No further witnesses, Your Honor, at this time. The State would rest.

BY THE COURT: Defense.

BY MR. KNOTT: Your Honor, no witnesses at this point in time. Just argument at the appropriate time.

BY THE COURT: You may proceed.

BY MR. KNOTT: Your Honor, the law in Mississippi, as the Court well knows, is very, very clear; and that is, there are two ways by which one can possess drugs, or anyone else. There is direct physical possession

and there is constructive possession.

Now, it is clear from the testimony that Timothy Brown-- who, by the way, is a resident of the City of Jackson-- did not physically possess any drugs whatsoever. So the only way that they could try to show that he did was under the law of constructive possession.

The law does say, as a general rule, that a presumption does arise when you can show that the drugs were found on premises owned by or possessed by the owner. However, when it is either not all by the defendant or there are other people frequenting the residence or lives there, that presumption goes away. In other words, you have to have, the law says, additional incriminating evidence that these drugs belong to him.

And, Judge, I asked Agent Coleman about any additional evidence that would suggest that Mr. Brown controlled these drugs, and there was

nothing else. Other than the fact that it was registered to him is not enough. The law is clear they must provide additional incriminating evidence.

And, Judge, I appreciate you asking that question, whether or not there were any other purchases made at that residence. There is no evidence there was any other purchases made at that residence.

So, Judge, based upon the clear law in Mississippi, this presumption, while it would apply on one hand, it would not apply on the other because there are other people who frequented this residence. In fact, the detective mentioned about someone else living outside in the shed. And he does not know who was there that day-- beyond law enforcement-- the day before or the day before then.

So based upon what we have as of right now, there is no probable cause to believe that Timothy Brown

possessed the drugs at hand. And because of that, Judge, we ask that you will find that there is no probable cause to bind this over to await the action of the grand jury.

In the alternative, Your Honor, we do have an argument for purpose of bond. But again, we shouldn't even have to discuss bond because Timothy Brown did not control those drugs that they found. He was not even there at the time that he was arrested. He was across the street. The evidence is clear about that.

So because the law is clear, because the facts are clear, Judge, we ask that you clearly find that there is no probable cause and that this case be dismissed against Timothy Brown.

BY THE COURT: Thank you, Counsel. Any response?

BY MR. CLIFFORD: Yes, Your Honor. Your Honor, the State would submit that this is a case of constructive

possession. While he was not at the house, he did own the house. He was across the street. They identified him from prior buys. While they couldn't say one way or the other whether any of them were made at the residence-- that this is a probable cause-- they determine that's where he lives.

As far as the man residing on the premises, the detective testified that he was in a shed, an outbuilding, not in the main house. And based upon the testimony and evidence, Your Honor, at this probable cause phase, the State believes it has met its burden as far as constructive possession.

BY THE COURT: Thank you, Counsel. In the matter of the *State of Mississippi vs. Timothy Brown*. On this court docket it's cause number 24-1614. The Court, having heard the testimony of the witness, finds that the State has met its burden as it relates to probable cause to bind over

to a Hinds County Grand Jury the charge of possession of a controlled substance. And as such, defense counsel's motion to dismiss this matter at this stage of the proceedings is hereby denied.

That at the initial appearance in this matter no bond was entered for the defendant in that it appeared the defendant constitutes an Article 3, Section 29 defendant and may be the subject of pending indictments in the Circuit Court of Hinds County.

That the Court will hear additional arguments of the parties as it relates to the current bond condition of the defendant at this time.

BY MR. KNOTT: Judge, if it pleases the Court. Your Honor, we would argue that Mr. Brown, with all due respect and despite the decision of the Court to deny-- or not dismiss this case, that he is entitled to bail.

Article 3, Section 29 provides that excessive bail should not be required, and all persons shall, before conviction, be bailable by sufficient sureties.

Subparagraph number 2 under Article 3, Section 29 also talks about the condition by which bail can be denied. And Section 2 talks about revocation of bond. That is when somebody is out on bond and they pick up another charge, or they are indicted while on bond, then the Court can revoke bail; and at that point in time no further bond should be granted. But, Judge, in this case that has not happened.

Mr. Brown has been in custody since October. The State of Mississippi has not filed a petition to revoke his bond. Yes, he was out on bond. In fact, Your Honor, he posted a two-hundred-thousand-dollar bond early part of the year. I believe it was during the summer of

this year.

So, since June or July of this year and presently, Your Honor, if you check the record, you will see the State has not filed a petition whatsoever to revoke his bond.

But then, Judge, that's not the only thing. If you look at Subsection 3 of Article 3, Section 29, it provides that a county and circuit court judge, yes, can deny bail-- as the Court is doing-- but it has to be a case where the charges carry at least 20 years or more, or by life imprisonment. And then it has to be a finding that the proof is evident and presumption is great.

Judge, let me just say this. The affidavit that we came prepared to defend against says that he had-- well, it says more than two grams but doesn't say exactly how many. And we submit that whatever he has been charged with, based upon the affidavit, number one, does not carry

more than 20 years in prison and certainly does not carry life.

Number two, the Constitution provides that there has to be a finding that the proof is evident and presumption great before the Court can deny bail. Judge, there has been no finding that the proof is evident or the presumption is great. Because of that and the Court has not found that, and nor has the State filed anything to revoke his bail, then Judge, we believe under Article 3, Section 29 he's entitled to bail.

Mr. Brown is 44, 45 years of age. He's from the City of Jackson. He has two children. Your Honor, this is a businessman who has worked in construction area, does drywall. He has also worked in the tire business, as well. He is a resident of Jackson. His mom is here. His brother is here. So he has substantial ties here in Jackson.

And so, there is no proof

whatsoever that Mr. Brown has either jumped bail, missed court, or will eventually miss court. So Judge, based upon that and based upon the rules of criminal procedure, Judge, we ask that reasonable bail be set at no more than twenty-five thousand dollars.

If the Court desires to have some type of ankle monitoring device outfitted against Mr. Brown, he will submit to that. But Judge, based upon the Constitution and based upon there's no revocation, Your Honor, we believe he's entitled to bail.

BY THE COURT: Thank you, Counsel. Any response?

BY MR. CLIFFORD: Yes, Your Honor. Your Honor, Mr. Brown is currently under a two-count indictment assigned to Judge Gibbs. And Your Honor, he was out on a two-hundred-thousand-dollar bond. Your Honor, it's the opinion of the State that due to the amount of drugs testified to by the

detective and based upon the statutes, he is, in fact, an Article 3, Section 29 defendant and bond ineligible.

BY THE COURT: Thank you, Counsel. In the matter of the *State of Mississippi vs. Timothy Brown* the Court, having bound this matter over to a Hinds County Grand Jury to await additional consideration on the charge of possession of a controlled substance, and in further consideration of all factors relevant to the issue of bond, including a review of the defendant's jail history report which does, in fact, indicate a criminal history as far back as 1999, and that the defendant is, in fact, the subject of a two-count indictment in the Circuit Court of Hinds County, which includes the violent offense of drive-by shooting...

That this Court finds that the defendant, Timothy Brown, represents a clear and present danger to the citizens of Hinds County, and that the

presumption of guilt in this matter currently before the Court does, in fact, appear great; and as such, this matter is bound over to await the actions of a Hinds County Grand Jury with no bond at this time. That will be the order of the Court.

* * * PRELIMINARY HEARING CONCLUDED * * *

COURT REPORTER'S CERTIFICATE

STATE OF MISSISSIPPI
COUNTY OF HINDS

I, Sara G. Sims, Official Court Reporter for the Hinds County Court, do hereby certify that the foregoing 34 pages, and including this page, constitute a true and correct transcript of the proceedings had upon the Preliminary Hearing in the aforesaid-styled and numbered cause before the Honorable Johnnie McDaniels, Hinds County Court Judge, on December 19, 2024.

I do further certify that my certificate annexed hereto applies only to the original and certified transcript. The undersigned assumes no responsibility for the accuracy of any reproduced copies not made under my control or direction.

Witness my signature, this the 7th day of June, 2025.

SARA G. SIMS
Official Court Reporter
CSR 1118