IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                    CRIMINAL NO. 3:25-CR-78-DCB-ASH

TIMOTHY BROWN A/K/A KT

## ORDER

This matter is before the Court on Defendant Timothy Brown's Motion to Dismiss [ECF No. 47] based on alleged violations of the Speedy Trial Act, 18 U.S.C. § 3161(b).  Having fully reviewed the motions and the record, and having held a hearing, the Court hereby denies the Motion to Dismiss.

## I.   Background

Defendant Timothy Brown was arrested on October 3, 2024, on a state bench warrant as a part of a Joint Task Force operation between the FBI and the Hinds County Sheriff's Office.  At that time, he was taken into custody by the state and detained pending trial on a state drug charge (a violation of Miss. Code Ann. § 41-29-139(c)).  Brown remained in state custody and was not indicted by a federal grand jury until May 6, 2025.  His initial appearance and arraignment in federal court occurred on May 20, 2025.  A superseding indictment followed on June 10, 2025, and his initial appearance and arraignment on the superseding indictment occurred

on June 17, 2025.[1]   Since then, Defense counsel has moved to continue the trial seven times, see Mots. [ECF Nos. 27, 34, 38, 43, 52, 56, 58], and the government has obtained one continuance. See Agreed Ore Tenus Order (1/2/26).  This matter is currently set for trial on September 8, 2026.  See Order [ECF No. 60].

In a nutshell, Brown's attorney argues that the Speedy Trial clock began to run when Brown was initially arrested on state charges on October 3, 2024, and expired 30 days later.  He argues that Brown's custody by the state up until his federal indictment on May 6, 2025, was a part of a concerted effort between the state and the federal government to circumvent the Speedy Trial Act.

## II.  Legal Standard

Under Federal Rule of Criminal Procedure 12(b), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." In the Fifth Circuit, "[t]he propriety of a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." United States v. Fontenot, 662 F.3d 640, 644 (5th Cir. 2011) (citations omitted). "If a question of law is involved, then consideration of the motion

---

[1] The original indictment charges Brown with nine counts of possession with intent to distribute Schedule II controlled substances, and the superseding indictment adds one count of felon-in-possession of ammunition.  See [ECF Nos. 3 and 25].

is generally proper." Id.

The Court also is guided by the firmly established principle that dismissal of an indictment is extraordinary and unusual relief because, unlike dispositive motion practice in civil cases, it encroaches upon the fundamental role of the grand jury. See, e.g., United States v. McFadden, 59 F.3d 1243, n. 4 (5th Cir. 1995) (dismissal of an indictment is limited to "extraordinary situations"); United States v. Fulmer, 722 F.2d 1192, 1195 (5th Cir. 1983) ("For this reason, we have held that a district court may dismiss an indictment with prejudice only where it has been shown that governmental misconduct or gross negligence in prosecuting the case has actually prejudiced the defendant.").

The Defendant has the burden of proving that a speedy trial violation has occurred.  United States v. Johnson, 29 F.3d 940, 945 (5th Cir. 1994).  The Speedy Trial act provides, in relevant part, that:

> [a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.  If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

18 U.S.C. § 3161(b).  If a suspect is not indicted within the time required by § 3161(b) as extended (if appropriate) by § 3161(b), then the charges against a defendant must be "dismissed or

3

otherwise dropped" by the government.  18 U.S.C. § 3162(a).

Even so, "[t]he Speedy Trial Act does not begin to run when the defendant is arrested by state authorities on state charges . . . ." United States v. Taylor, 814 F.2d 172, 174 (5th Cir. 1987). Instead, an "individual is not arrested under [§] 3161(b) until he is taken into custody after a federal arrest for the purpose of responding to a federal charge." United States v. Johnson, 815 F.2d 309, 312 (5th Cir. 1987) (collecting cases). Therefore, "[a]n arrest made by a state officer, even if state and federal officials are cooperating at the time, does not start the running of the 30-day time period." Taylor, 814 F.2d at 175.

The Fifth Circuit, however, has adopted the "ruse exception" to the Speedy Trial Act to prevent "'federal criminal authorities [from] colludi[ing] with civil or state officials to have those authorities detain a defendant pending federal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act.'" United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000) (quoting United States v. Cepeda-Luna, 989 F.2d 353, 357 (9th Cir. 1993)).  Therefore, the Speedy Trial Act may be triggered by state detentions that are "'mere ruses'" to hold a defendant for federal prosecution.  Id. (quoting Cepeda-Luna, 989 F.2d at 357).

The "ruse" exception only applies "where the defendant demonstrates that the primary or exclusive purpose of the

4

[nonfederal] detention was to hold him for future criminal prosecution" on federal charges. Id. However, "'if the detaining authorities have a lawful basis for their [nonfederal] detention, a defendant is not entitled to invoke the exception.'" United States v. Kelley, 40 F.4th 276, 283 (5th Cir. 2022) (quoting United States v. Pasillas-Castanon, 525 F.3d 994, 998 (10th Cir. 2008)); see also United States v. Mooneyham, 376 F App'x 440, 441-442 (5th Cir. 2010) (finding that state criminal detention prevents application of the ruse exception). Accordingly, the "ruse" exception "requires the defendant to prove bad faith." Id. at 283 n.12 (citing Pasillas-Castanon, 525 F.3d at 998 n.1).

The facts and analysis in Kelley provide a road map for approaching the present case. 40 F.4th at 276. In Kelley, the defendant was initially arrested on April 6, 2019, by state authorities on charges of evading arrest and felon-in-possession of a weapon. He was detained (even though he posted bond) because he had a prior conviction. Consequently, the state moved to revoke his parole. Within days of Kelley's arrest, while he was being held in state custody and his state charges were progressing, a state Task Force Officer notified the Assistant United States Attorney of the state weapons charge. This started the ball rolling toward a federal charge of felon-in-possession. In the months that followed, there was some communication between the state and federal officials regarding the investigation into the

5

potential federal felon-in-possession charge.  However, the state continued to pursue its charges against Kelley.  At some point, Kelley was released from state custody, but he was re-arrested on separate, unrelated state charges on August 14, 2019, and again on October 9, 2019.  After the October 9 arrest, he was detained without bond.

Thereafter, on October 24, 2019, a federal grand jury indicted Kelley on a federal felon-in-possession charge.  The federal government applied for a writ of habeas corpus ad testificandum on December 19, 2019, requesting that the U.S. Marshal produce Kelley for an initial appearance in federal court on January 2, 2020.

On January 27, 2020, Kelley's counsel filed a motion to dismiss based on the Speedy Trial Act and argued the "ruse" exception.  The Court held two hearings on the matter and denied the motion to dismiss on April 14, 2020, finding that Kelley failed to show that the potential federal weapons charge "was 'the' or even 'a' primary [motivation for holding him] and [did] not prove [that] his 'detention' by state officials was a ruse."  Id. at 281.  The district court conducted a bench trial on August 13, 2020, and found him guilty on the felon-in-possession charge.

On appeal, the Fifth Circuit affirmed the district court's denial of Kelley's speedy trial motion to dismiss on three bases. First, it found that the state court charges were moving forward without input from or coordination with the federal government.

6

Id. at 283.  Second, it concluded that because the state had a lawful basis to detain the defendant "that was completely independent of the potential federal basis for prosecuting him, the ruse exception to the Speedy Trial act [did] not apply."  Id. at 284.  Finally, because both state and federal governments could prosecute him for the same conduct (felon-in-possession of a firearm) under their respective statutes, the court surmised that it could not "assume that [the state] acted in bad faith, which [defendant] must prove, where it had an independent obligation to prosecute" the defendant.  Id.

A recent case from a sister court is also instructive on this issue.  The Southern District of Texas concluded that state charges against a defendant provided state officials with a lawful basis to hold him in custody.  See United States v. Garcia, Criminal Case No. 2:21-CR-00589, 2025 WL 57740 (S.D. Tex. Jan. 9, 2025). Analyzing the facts through the lens of Kelley, the court found that Garcia offered no evidence that his detention by the state was a ruse to hold him for prosecution of federal charges.  Id. The court closely inspected the timeline of Garcia's initial arrest on state charges, the exchange of information between state and federal officials, and the timing of the federal indictment.  Id.

Likewise, the Southern District of Mississippi's decisions on this issue have been fact-driven.  In United States v. Johnson, the Court noted that a defendant presented documents suggesting

7

cooperation between state and federal officials regarding the defendant's custody.    Crim. No. 3:18-CR-217-DPJ-FKB, 2021 WL 3179308, at *4 (S.D. Miss. July 26, 2021).    The Court acknowledged that a federal agency contributed to the defendant's arrest and "probably" knew he would be held, but the defendant was not held on federal criminal charges.    Id. at *3.    Even so, this Court decided that the defendant did not meet his burden of showing that "'the primary or exclusive purpose of the . . . detention was to hold him for future criminal prosecution.'"    Id. at *4 (quoting United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000)).    In yet another decision, this Court rejected a defendant's ruse exception argument, finding that a defendant "'proffered no evidence to suggest that the state's failure to indict [him] was a result of a desire to subvert the time limits of the Speedy Trial Act.'"    See United States v. Clayton, Crim. No. 3:21-CR-19-DPJ-FKB, 2022 WL 243891, at *4 (S.D. Miss. Jan. 25, 2022) (quoting United States v. Ramirez, No. 94-20179, 1995 WL 313976 (5th Cir. May 9, 1995)(unpublished)).

## III. Discussion

Based on the foregoing authorities, the Court explored three issues at the hearing in this case:

    1. While Brown was in state custody, were the state court charges moving forward without input or coordination with the federal government?

2. Did the state have a lawful basis to detain Brown that was completely independent of the potential federal basis for prosecuting him?

3. Is there evidence of bad faith by the state?

Considering the filings and evidence submitted during the hearing conducted by the Court, it appears that Brown was under investigation by a Joint Task Force (consisting of Hinds County Sheriff's officers and FBI agents) for drug-related offenses in the months leading up to his arrest.  On the day of his arrest, October 3, 2024, a federal search warrant was executed on the premises that he owned and occupied.  When Joint Task Force members entered, they found evidence of drugs and narcotics, as well as ammunition.  However, they did not find Brown.  Members of the Joint Task Force determined that he could possibly be located at a nearby home.  To that end, an officer with the Hinds County Sheriff's Office (Jay Coleman), who was part of the Joint Task Force, obtained search and bench arrest warrants from a Hinds County circuit judge to search a nearby home and to arrest Brown for possession of a controlled substance, Miss. Code Ann. § 41-29-139(c).  See Exs. C, D, E [ECF No. 47] at 9-13.  When officers executed the state warrants, they found and arrested Brown.  At that time, Brown was detained by the state based on possession of greater than 2 grams of methamphetamine, a violation of Miss. Code Ann. § 41-29-139(c).

9

Looking at the above-referenced factors, Brown has failed to show coordination or cooperation, much less collusion, between state and federal officials with regard to the timing of the prosecution of this case.  Brown relies solely on the testimony of a Joint Task Force officer and Hinds County Sheriff's Deputy, Jay Coleman, who testified in state court during the preliminary hearing on Brown's state charges, but whom he did not call at his federal motion to dismiss hearing.  Brown argues that Coleman testified "that he assumed that this case began and would end with the federal government," and that "it would be adopted by the federal government for prosecution."  Def's Memo. [ECF No. 48] at 5; [ECF No. 47] at 32:17-23.  Brown pins his argument on Coleman's <u>assumption</u> made in response to a leading question by counsel.

Moreover, Brown has failed to show any basis whatsoever for his argument that Coleman – a Hinds County Sheriff's deputy – could speak on behalf of the United States Attorney's Office or the state prosecuting authorities.  In addition, Brown did not provide any documentation – either by testimony or evidence of a paper trail -- of coordination between the state and federal government for the state to hold him until the federal authorities could indict him.  <u>See</u> <u>Johnson</u>, 2021 WL 3179308, at *4 (finding that documents suggesting cooperation between state and federal authorities did not establish "collusion" between them).  As this Court observed in <u>Johnson</u>, "'mere cooperation by federal and state officials does

10

not constitute collusion so as to characterize the arrest as federal and start the running of the Speedy Trial Act clock.'" Johnson, 2021 WL 3179308, at *3 (quoting United v Ramirez, No. 94-20179, 1995 WL 313976, at *3 (5th Cir. May 9, 1995)).

Turning to the second factor, the state had an independent basis to detain Brown. Brown was charged with a violation of state law, Miss. Code Ann. § 41-29-139(c), in Cause No. 24-1614 in Hinds County, Mississippi. See [ECF No. 47] at 14. At the conclusion of the preliminary hearing on his state charge, the state court judge found that Brown should be held without bond so that his case could go before the state grand jury. Id. at 47:6. As another basis for its ruling, the state court emphasized that when Brown was arrested, he had been released from state custody on a $200,000 bond related to a two-count indictment that included "the violent offense of drive-by shooting," and, as such, Brown represented "a clear and present danger to the citizens of Hinds County." Id. at 46. And as explored at the state preliminary hearing, Brown's bond was also subject to revocation. Id. at 41-43. In sum, as the government points out, Brown's counsel failed to elicit any testimony from Coleman that the "primary or exclusive" purpose of the Brown's arrest on state drug charges was to require Brown wait in state custody until the federal case could proceed. Although it appears that the state has not indicted him on the state charges, such indictment is beyond the control of the

11

federal authorities.

Finally, while Brown intimates that bad faith on the part of the state exists, he has failed to provide any supporting evidence of bad faith, be it testimonial or documentary.  In short, Brown has "proffered no evidence to suggest that the state's failure to indict [him] was the result of a desire to subvert the time limits of the Speedy Trial Act."  Ramirez, 1995 WL 313976, at *3; see also Clayton, 2022 WL 243891, at *4 (finding lack of evidence of collusion).  As the Fifth Circuit has stated, "'[t]he mere fact that the detaining authorities are aware other potential criminal charges are available does not trigger the [ruse] exception.'" United States v. Molina, 535 F. App'x 417, 418 (5th Cir. 2013)(quoting United States v. Pasillas-Castanon, 525 F.3d 994, 998 (10th Cir. 2008)).

For these reasons, the Court finds that Brown has failed to establish that he was arrested and held by state authorities for the primary or exclusive purpose of evading the Speedy Trial Act.

### IV.  Conclusion

Accordingly, for the reasons discussed above, the Court hereby denies Brown's Motion to Dismiss [ECF No. 47] because he has failed to establish a violation of the Speedy Trial Act.

SO ORDERED AND ADJUDGED, this 8th day of July, 2026.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

12